IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


DORIS R. SMITH                                                          PLAINTIFF

VS.                              CASE NO. 4:17-CV-00857 JM

DEPARTMENT OF FINANCE
and ADMINISTRATION                                                      DEFENDANT

PLAINTIFF'S BRIEF IN SUPPORT FOR HER
MOTION FOR ATTORNEY'S FEES AND COSTS


Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), in order to recover damages against the defendant for the unlawful employment practices that the plaintiff Doris R. Smith has been subjected to on account of her race and in retaliation for having complained about discriminatory treatment. This is also an action for declaratory judgment pursuant to 28 U.S.C.S. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well. This matter was tried before a jury on the dates of June 8th, 9th, 10th, 11th, 2020. The jury returned a verdict in the plaintiff's favor. As the prevailing party, the plaintiff is entitled to attorney's fees and costs.


*Abbreviated* Statement of Facts

Doris Smith received her bachelor's degree in Accounting and a minor in Computer Information Systems from Southern Arkansas University in Magnolia, Arkansas. Ms. Smith is also a certified public accountant. Ms. Smith became employed by the Arkansas Department of Finance and Administration (DF&A) in April 2004. Ms. Smith was hired in a position called the

Internal Auditor's position.  When Ms. Smith was hired, she was classified as an "exceptionally well qualified applicant."  After the Internal Auditor's position, Ms. Smith then became the grants administrator supervisor.   During Ms. Smith's tenure with DF&A, she received five (5) promotions.  Ms. Smith was next promoted to the Program Support Manager's position, and was next promoted to the Assistant Administrator's position.  Ms. Smith was finally promoted to the position of Administrator in the Office of Intergovernmental Services.

The State of Arkansas went through a pay plan reorganization which changed the employee pay codes.  Before the pay plan was implemented, the plaintiff and her white counter-parts were classified as N909s, with the exception of Ricky Quattlebaum, who was classified as a N907.  In December 2016, Mr. Quattlebaum informed Ms. Smith that he had heard that he and Ms. Smith were proposed to be classified as a GS-13 and GS-15 respectively.  Mr. Quattlebaum testified that a few days later, he went to Paul Louthian, who assured Quattlebaum that he would get him classified at a higher pay grade.   Shortly thereafter, Mr. Louthian had a "casual conversation" with Kay Barnhill, and mentioned that he was of the opinion that Ms. Smith should be classified as a GS-15, while Mr. Quattlebaum should be classified as a SE01.

After seeing the proposed legislation during the latter part of January 2017, Ms. Smith attempted to get an explanation why she was being proposed to be demoted to a GS-15, while her white counterparts were going to the SE02 pay grade designation.  When Ms. Smith could not get an explanation, she went to the Equal Employment Opportunity Commission (EEOC) in February 2017.  On February 16, 2017, the EEOC sent notification to Amy Valentine, the Human Resources Manager for the Department of Finance and Administration, informing the agency that Ms. Smith was in the process of filing a complaint of discrimination.  Ms. Valentine spoke to Mr. Louthian about Ms. Smith's filing.

A draft of Senate Bill 289 was submitted during the latter part of February 2017, which had Ms. Smith going to the GS-15 pay grade, and Mr. Quattlebaum going to the SE01 pay grade. However, after getting the EEOC notification in February 2017, SB 289 was amended to have Ms. Smith's position classified at the SE02 pay grade along with her white counterparts; however, Ms. Smith was not aware of this amendment. Ms. Smith requested a meeting with Mr. Louthian on July 7, 2017 to discuss problems that she was having filling vacancies within her staff. It was during this meeting that she discovered that although her position had been designated at the SE02 pay grade, she was being "downgraded" to the SE01 pay grade, which is what Mr. Louthian told her. Ms. Smith subsequently filed a second charge of discrimination with the EEOC on October 31, 2017.

The evidence demonstrated that the plaintiff was treated differently from her white counterparts who worked in the Division of Management Services. The evidence demonstrated that Paul Louthian wanted to terminate the plaintiff for complaining about acts of discrimination. Mr. Louthian used Ms. Smith as a scapegoat and blamed her for the STOP Implementation Plan not being approved by the Department of Justice. Ms. Smith was terminated on April 3, 2018. The jury found in favor of the plaintiff on her claim of race discrimination, and her claims of retaliation. The jury awarded the plaintiff $223,333.81 in back pay, and awarded her $108,000.00 in compensatory damages.

<div align="center">Statement of Law</div>

**Plaintiff is the Prevailing Party for Purposes of 42 U.S.C. § 1988 Fee Award**

"A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." Texas Teachers v. Garland School District, 489 U.S. 782, 791, 103 L.Ed.2d 866, 876, 109 S.Ct. 1486

(1989), (emphasis added).   The Court in *Garland* went on to say that "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind.'  489 U.S. at 792, 103 L.Ed.2d at 877, *quoting* Nadeau v. Helgence, 581 F.2d 275 (1ˢᵗ Cir. 1978).  "It is generally true that status assessment of how a party fares on each motion along the way." Jenkins by Jenkins v. State of Missouri, 115 F.3d 554, 557 (8ᵗʰ Cir. 1997).

> The United States Supreme Court held that:
>
> [i]n order to qualify for attorney's fees under § 1988, a plaintiff must be a 'prevailing party.' Under our 'generous formulation' of the term, 'plaintiffs may be considered 'prevailing parties' for attorney fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L.Ed.2d  40, 103 S.Ct. 1933 (1983) (*quoting* Nadueau v. Helgenmoe, 581 F.2dd 275, 278-279 (CA1 1978).

Farrar v. Hobby, 506  U.S. 103, 109, 121 L.Ed.2d 494, 113 S.Ct. 566 (1992).  *See also*, Allen v. Higgin, 902 F.2d 682 (8ᵗʰ Cir. 1990).   The Supreme Court in *Hobby* went on to hold that "[i]n short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  121 L.Ed.2d at 503.

In the case at bar, the plaintiff brought three (3) claims for relief.  *First*, the plaintiff claimed that she was the victim of discrimination based on her race when she was denied the SE02 pay grade like her white counterparts were given.  *Second*, the plaintiff contends that after complaining about race discrimination, she was retaliated against by being downgraded to the SE01 position, when the legislature had approved her position for the SE02 pay grade designation.  *Third*, the plaintiff contends that she was retaliated against by being terminated from her place of employment with the defendant, after complaining about discrimination.  The jury found in favor

of the plaintiff on all three (3) claims, awarding her $223,333.81 in back pay and $108,000.00 in

compensatory damages.

As the United States Supreme Court recognized:

> In *Hanarahan v. Hampton*, 446 U. S. 754, 64 L.Ed.2d 670, 100 S.C. 1987 (1980)
> (*per curiam*), we received the legislative history of § 1988 and found that 'Congress
> intended to permit the interim award of counsel fees only when a party has
> prevailed on the merits of at least some of his claims.'  Our [r]espect for ordinary
> language requires that a plaintiff receive at least some relief on the merits of his
> claim before he can be said to prevail'  *Hewitt v. Helms*, 482 U.S. 755, 760, 96
> L.Ed.2d 654, 107 S.Ct. 2672 (1987).  We have held that even an award of nominal
> damages suffices under this test.  *See Farrar v. Hobby*, 506 U.S. 103, 121 L.Ed.2d
> 494, 113 S.Ct. 566 (1992) (emphasis added).

Buckhannon Home v. West Virginia Department Health and Human Resources, et al., 532 U.S.

___, 149 L.Ed.2d 855, 862, 121 S.Ct. ____ (2001).

There can be no question that the plaintiff in this case prevailed.  The plaintiff set out on a

course to prove that she was a victim of race discrimination, when she was denied the SE02 pay

grade, and then was the victim of retaliation when she was downgraded to the SE02 pay grade,

despite the fact that SB289 had authorized her position to go to the SE02 pay classification. And

further, that she was the victim of retaliation when she was terminated from her place of

employment with the defendant. The jury did in fact find that the plaintiff was the victim of a race

discrimination and retaliation.

> A prevailing party in a § 1981 action may be awarded a reasonable attorney's fee.
> 42 U.S.C. § 1981(b). 'Attorney's fees are within the broad discretion of the district
> court and will not be reversed absent an abuse of discretion.' Hanig v. Lee, 415
> F.3d 822, 825 (8th Cir. 2005).  To calculate attorney's fees, courts typically begin
> by using the lodestar method, which multiplies the number of hours reasonably
> expended by reasonable hourly rates.  Brewington v. Keener, 902 F.2d 796, 805
> (8th Cir. 2018). 'When determining reasonable hourly rates, district courts may rely
> on their own experience and knowledge of prevailing market rates.' Hanig, 415
> F.3d at 825.

Bryant v. Jeffrey Sand Co., 919 F.3d 520, 529 (8th Cir. 2019).

In <u>Bryant</u>, *supra*., the defendant contended that it was error for the trial court to award plaintiff's counsel his customary hourly rate of $350.00.  The defendant argued that it was error for the district court to accept undersigned counsel's representation that the $350.00 hourly rate was his customary rate, based on being awarded this rate in other cases.  The defendant argued that counsel for the plaintiff failed to place in his affidavit that the $350.00 hourly rate was his "normal" hourly rate.  The Eighth Circuit held that there was no such requirement.  Counsel for the plaintiff put in his affidavit that the $350.00 hourly rate was "reasonable and commensurate" with his qualifications.  Plaintiff's counsel provided a list of recent hourly rates that he was awarded.  "The district court's decision to accept the rate as reasonable, in light of its own experience and knowledge, was not an abuse of discretion."  <u>Bryant v. Jeffrey Sand Co.</u>, 919 F.3d at 529.  Just as in the case at bar, undersigned counsel did not provide affidavits from other lawyers for the purpose of establishing what the prevailing market rate is.  In that there are so few lawyers in this state, especially in the Little Rock area who routinely handle employment discrimination cases on behalf of the plaintiff, particularly who have the years of experience and qualifications as undersigned counsel has, getting affidavits is not practicable.

The Eighth Circuit held that "[p]revailing parties ordinarily should recover section 1988 fees unless special circumstances would make such an award unjust."  <u>Little Rock School District v. Pulaski County Special School District No. 1</u>, 17 F.3d 260 (8th Cir. 1994); <u>St. Louis Fire Fighters Association v. St. Louis, Mo.</u>, 96 F.3d 323, 331 (8th Cir. 1996).  "Congress considered vigorous enforcement to vindicate civil rights a high priority and entrusted plaintiffs to effectuate this policy. . . Therefore, a prevailing plaintiff is deserving of an award of attorney's fees because they are assessed against a 'violator of federal law.'"  <u>Dean v. Riser</u>, 240 F.3d 505, 507 (5th Cir. 2001), *quoting*, <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 98 S. Ct. 694, 54 L.Ed.2d 648 (1978).

Even in situations where the plaintiff recovers a small amount, the courts still hold that the plaintiff is entitled to recover their attorney's fees.  "Moreover, we recall that '[b]ecause damage awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.'"  Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000), *quoting*, City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

> 'The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.' *Kerr v. Quinn*, 692 F.2d 875, 877 (2nd Cir. 1982).  'If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.' S.Rep. No. 94-1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910.

Woodford v. Community Action Agency, Green County, 239 F.3d 517, 525 (2nd Cir. 2001).

### The Time Claimed Was Reasonable Expended On the Case

The time claimed, **248.90** hours, was "reasonable expended on the litigation . . . ." Hensley, *supra*.. As this submission shows, plaintiff employed counsel sparingly and efficiently. Each element of the time claimed is properly included in an award.  This case was vigorously fought by the defendant, which had two (2) active counsel participating in this case, an agency attorney at counsel's table, and a paralegal, not to mention other support staff.

The plaintiff in this case is requesting attorney's fees in the amount of **$87,115.00**, which is a reasonable fee request. "A reasonable fee is 'one that is adequate to attract competent counsel, but . . . .[that does] not produce windfalls to attorneys.'" Hendrickson v. Branstad, 934 F.2d 158 (8th Cir. 1991); Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984), *quoting* 5908, 5913. The standard for review in awarding attorney's fees is "abuse of discretion or an error in implementing the governing legal standards." McDonald v. Armontrout, 860 F.2d

1456, 1458 (8th Cir. 1988), *quoting*, <u>Wilmington v. J. I. Case Co.</u>, 793 F.2d 909, 923 (8th Cir. 1986).

*Accord* <u>Moore v. City of Des Moines</u>, 766 F.2d 343 (8th Cir. 1985), *cert denied*, 474 U.S. 1060, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 76 L.Ed.2d 40, 50, 103 S.Ct. 1933 (1983).  "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."  <u>Jenkins by Jenkins v. State of Missouri</u>, 115 F.3d 554, 558 (8th Cir. 1997); *citing*, <u>Farrar v. Hobby</u>, 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992).

When Congress enacted the "Civil Rights Attorney's Fees Awards Act of 1976," which is codified at 42 U.S.C. § 1988, the House Report referred to twelve (12) factors as set out in the case of <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1975).  Some of the *Johnson* factors are: 1) the time and labor required; 3) the skill requisite to perform the legal service properly; 5) the customary fee; 6) whether the fee is fixed or contingent; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; and 12) awards in similar cases.

The plaintiff's attorney is requesting an hourly rate of $350.00, which is commensurate with what other attorneys in this market charge, and is appropriate considering undersigned counsel's knowledge and skill level.  Undersigned counsel was awarded an hourly rate of $135.00 by The Honorable George Howard on December 17, 1997, in the case of <u>Debra A. Smith, et al. v. Riceland Foods, Inc.</u>, 151 F.3d 813 (8th Cir. 1998).[1]  Also, on July 9, 2001, counsel for plaintiff

---

[1] This case was affirmed in part and reversed in part.  The verdict for Mark A. Thomas was reversed, and the case was remanded to determine attorney's fees.  However, the defendants never objected to the hourly rate of Austin Porter Jr., which it agreed was appropriate.

was awarded an hourly rate of $150.00 in the case of <u>Shirley Justice v. Togo West, et al.</u>, EEOC Commission Nos. 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X/Agency No. 95-1246, 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X/Agency No. 98-2498, 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X/Agency No. 95-1715.  Undersigned counsel was also awarded an hourly rate of $150.00 in the case of <u>Kevin Byers v. Augusta School District, et al</u>., United States District Court No. 4:97-CV-00109 JFF.  On December 17, 2001, undersigned counsel was awarded an hourly rate of $150.00 in the case of <u>Graham, et al. v. Arkansas Department of Human Services</u>, United States District Court No. 4:00-CV-00960 JMM.  On May 5, 2003, undersigned counsel was awarded an hourly rate of $170.00 in the case of <u>Nicole L. Gray v. United States Beef Corporation</u>, United States District Court No. CV-02-6101. On October 28, 2004, undersigned counsel was awarded an hourly rate of $200.00 in the case of <u>Desi A. Ledbetter v. Alltel Corporate Services, Inc</u>., United States District No. 4:03-CV-00533 WRW.[2]  In January 2007, undersigned counsel was awarded an hourly rate of $225.00 based on a settlement in the case of <u>Jerry Cooperwood v. The City of Kensett, Arkansas, et al</u>., United States District Court No. 4:05-CV-0902 JLM.  In March 2009, undersigned counsel was awarded an hourly rate of $250.00[3] in the case of <u>Levoria Jefferson, et al. v. Helena/West Helena School District</u>, United States District Court No. 2:04-CV-00170 WRW. On September 2, 2016, undersigned counsel was awarded an hourly rate of $325.00 in the case of <u>Little Rock School District v. Pulaski County Special School District, et al.</u>, United States District Court No. 4:82-CV-00866 DPM.  On October 20, 2017, undersigned counsel was awarded an hourly rate of $350.00 in the case of <u>Sylvia Perkins, et al. v. Joshua Hastings</u>, United States District Court No. 4:15-CV-00310 BSM.

---

[2] Alltel Corporate Services, Inc., did not challenge this hourly rate at the district court level, apparently believing it to be reasonable.
[3] Aldophus Hicks did not challenge this hourly rate at the district court level, believing it to be reasonable.

On May 31, 2018, undersigned counsel was awarded an hourly rate of $350.00 in the case of <u>Adrian Bryant v. Jeffrey Sand Company</u>, United States District Court No. 4:16-CV-0509 BSM.[4] On July 23, 2018, undersigned counsel was awarded an hourly rate of $285.00 by The Honorable Price Marshall; counsel had requested his customary hourly rate of $350.00, but Judge Marshall refused despite stating that "[M]r. Porter is a gifted, skilled, and experienced lawyer." The Court noted that Mr. Ridgell's success "wasn't across the board." The jury ruled in favor of Mr. Ridgell's race claim, but not the retaliation claim. *See* <u>Albert Ridgell v. The City of Pine Bluff, Arkansas, et al.</u>, United States District Court No. 5:16-CV-00073 DPM [**Doc. # 87**][5]. On May 2, 2019, undersigned counsel was also awarded his customary hourly rate of $350.00 by the Eighth Circuit Court of Appeals. *See* <u>Adrian Bryant v. Jeffrey Sand Company</u>, Eighth Circuit Court of Appeals No. 18-2297.

"The lodestar award (the product of reasonable hours multiplied by a reasonable rate) is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed within the lodestar." <u>Casey v. City of Cabool, Mo.</u>, 12 F.3d 799 (8th Cir. 1993). In order to keep up with the demand for lawyers to represent victims of discrimination, it is important that they be paid a fee that is attractive enough to persuade them to take on such cases.

> Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens. In other words, 'the market rate of legal time is the opportunity cost of that time, the income foregone by representing this plaintiff.' <u>Gusman v. Unisys Corp.</u>, 986 F.2d 1146, 1149 (7th Cir. 1993) (*quoting* <u>Barrow v. Falck</u>, 977 F.2d 1100, 1105 (7th Cir. 1992). Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. The rates for these lawyers are usually below market for a reason. A refusal to pay for experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence.

---

[4] This hourly rate was upheld on appeal. *See* <u>Adrian Bryant v. Jeffrey Sand Co.</u>, 919 F.3d 520, 529 (8th Cir. 2019).
[5] The Eighth Circuit reversed the jury verdict in this case *in toto*. *See* <u>Albert Ridgell v. The City of Pine Bluff, Arkansas, et al.</u>, 935 F.3d 633 (8th Cir. 2019).

Casey v. City of Cabool, Mo., 12 F.3d 799, 805 (8th Cir. 1993) (emphasis added).

The United States Supreme Court in *Blanchard* went on to say "[a]s we understand § 1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." Blanchard v. Bergeron, 489 U.S. 87, 93, 103 L.Ed.2d 67, 75, 109 S.Ct. 939 (1989).

Ordinarily, civil rights litigants have a difficult time finding lawyers to prosecute their claims. Even when a plaintiff is able to find a lawyer to prosecute their claim of discrimination, they usually have to rely on inexperienced and sometimes incompetent lawyers to handle their claims. Fortunately, the plaintiff was able to secure the services of a lawyer experienced in handling civil rights cases involving these types of issues.

> Congress intended that '[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' S. Rep. No. 1011, 94th Cong. 2d Sess. 5 (1976), **reprinted in** 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights laws by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See Id*. A plaintiff bringing a civil rights action 'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest. . . .' *Newman v. Piggie Park Enterprise, Inc*., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

Casey v. City of Cabool, Mo., 12 F.3d 799, 805 (8th Cir. 1993).

In *Casey*, the plaintiff brought a civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his first amendment right of free speech when he was fired for making certain statements concerning city policies. The plaintiff in *Casey* was awarded $18,888.00 in damages, and the court awarded him $65,987.00 in attorney's fees and $3,294.89 in costs. The

defendants appealed the lower court's award of attorney's fees.  The Eighth Circuit upheld the award of attorney's fees noting "[t]he district court's determination respecting fees is reversible only if the court abused its discretion." <u>Casey v. City of Cabool, Mo.</u>, 12 F.3d 799, 804 (8ᵗʰ Cir. 1993), *quoting*, <u>Hendrickson v. Branstad</u>, 934 F.2d 158, 162 (8ᵗʰ Cir. 1991).

Even in cases where the plaintiff has received success on some of the claims brought, the Courts have held that fees should not be reduced in those instances. As the United States Supreme Court stated:

> the plaintiff's claims for relief will involve common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> *Hensley*, 461 U.S. at  435, 103 S.Ct. 1933; see also, *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8ᵗʰ Cir. 1991) ('A fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit . . . . A lawsuit . . . which includes several related legal theories based on a common core of facts, should not be viewed as a series of discrete causes of action, and compensation should not be awarded on a claim-by-claim basis.') (citation omitted).'

<u>Wal-Mart Stores, Inc. v. Barton</u>, 223 F.3d 770, 773-774 (8ᵗʰ Cir. 2000).

As mentioned herein, civil rights cases, especially cases involving race discrimination are some of the most difficult and least desired cases for a lawyer to deal with.  In the *Harvard Law & Policy Review*, authors Kevin M. Clermont and Stewart J. Schwab, write about the difficulties that employment discrimination plaintiffs have in winning their cases.   According to the research conducted by Clermont and Schwab, employment discrimination litigants, as compared to other civil litigants, "[m]anage fewer resolutions early in litigation, and so they have to proceed to trial more often.  They win lower proportion of cases during pretrial and at trial.  Then, more of their

successful cases undergo appeal.  On appeal, they have a harder time both in upholding their successes and in reversing adverse outcomes." Clermont and Schwab, *Employment Discrimination Plaintiffs In Federal Court: From Bad To Worse?*, 3 Harv. L. & Pol'y Rev. 1 (Winter 2009).  Authors Clermont and Schwab also found that when the employment discrimination plaintiff wins their trial, they have a 41.10% chance of having the verdict reversed, as opposed to when the defendant wins at the trial level, they have a 9% chance of having the case reversed on appeal.  3 Harv. L. & Pol'y Rev.1, p. 10.  "For a plaintiff victorious at trial in an employment discrimination case, the appellate process offers a chance of retaining victory that cannot meaningfully be distinguished from a coin flip.  Meanwhile, a defendant victorious at trial can be assured of retaining that victory after appeal." The authors went on to say that "[e]mployment discrimination plaintiffs constitute one of the least successful plaintiff classes at the district court level, in that they win a very small percentage of their actions and fare worse than almost any other category of civil cases."  3 Harv. L. & Pol'y Rev. 1, p. 13.

As previously stated herein, due to the complexity and the difficulty of winning employment discrimination cases, persons who have been discriminated against on the basis of their race, sex, or national origin, often have to forgo such claims due to their inability to find lawyers who are willing to take on such cases.  Undersigned counsel often feels like that lonely voice, "crying in the wilderness."  An article which appeared in the *United States News & World Reports* indicated that companies really should not worry about discrimination claims.   In a study conducted by Theodore Eisenburg of Cornell University, he stated that, "'job discrimination cases remain one of the single most unsuccessful classes of litigation for plaintiffs.  They settle less and lose more than almost anything else.'  Among the only cases consistently less successful are complaints filed by prisoners, few of whom are represented by lawyers."  Saltzman, *Suppose They*

*Sue?  Why Companies Shouldn't Fret So Much About Bias Cases*, U. S. News & World Report, p.

69 (September 1997).   In comparing Fair Labor Standards Act (FLSA) cases to that of civil rights

cases, Judge Billy Roy Wilson stated, "[b]oth types of cases are intended to vindicate rights

protected by Congress, but the length of litigation is much longer in civil rights cases and the odds

of success are much lower."  *See* <u>Anthony Vines, et al. v. Welspun Pipes, Inc., et al</u>., United States

District Court No. 4:18-CV-00509 BRW [**Doc. # 95, p. 8**].

In conclusion, the plaintiff is the prevailing party and is entitled to her full fee.  The plaintiff

was able to achieve a tremendous success in this case.   Hopefully, this case will bring about

systemic changes within the Arkansas Department of Finance and Administration, which is an

agency that has a history of discrimination and retaliation against African Americans.   The hours

that were expended in this case were reasonable, and the hourly rate requested is reasonable, and

commensurate with the experience of undersigned counsel.

<div style="margin-left: 50%;">

Respectfully submitted,

Austin Porter Jr.
Bar Number 86145
PORTER LAW FIRM
The Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
E-mail: <u>Aporte5640@aol.com</u>

</div>

## <u>CERTIFICATE OF SERVICE</u>

      I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas, on this 18th day of June 2020, by using the CM/ECF system, which is designed to send notification of such filing to the following person:

      Robert T. James
      Maryna Jackson
      Assistant Attorney General
      323 Center Street, Suite 200
      Little Rock, Arkansas 72201

      Robert.james@arkansasag.gov
      Maryna.jackson@arkansasag.gov

                                 Austin Porter Jr.